## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| **Deluxe Corporation and Safeguard Business Systems, Inc.,** | |
| **Plaintiffs,** | CIVIL ACTION NO: |
| **v.** | **JURY TRIAL DEMANDED** |
| **The Roost Holding Company, LLC, d/b/a Cox Graphic Services, Gavin Cox, Patrick Barfield, Dawn Cook, Lenzi Faircloth, Jennifer Dockrey, Courtney Hudson, Michael Knight, Linda Stewart, Jonathan Howse, and Jon Wood,** | |
| **Defendants.** | |

## <u>COMPLAINT</u>

Deluxe Corporation ("Deluxe") and Safeguard Business Systems, Inc. ("Safeguard") (collectively, "Plaintiffs"), by and through undersigned counsel, bring forth this Complaint against The Roost Holding Company, LLC d/b/a Cox Graphic Services ("Cox Graphic"), Gavin Cox, Patrick Barfield, Dawn Cook, Lenzi Faircloth, Jennifer Dockrey, Courtney Hudson, Michael Knight, Linda Stewart,

Jonathan Howse, and Jon Wood (together, "Individual Defendants," and collectively with the Cox Graphic, "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1.  On August 22, 2025, Individual Defendants abruptly resigned from their sales and customer relations positions as employees of Plaintiffs. Plaintiffs' subsequent investigation, which remains ongoing, has revealed that for months prior to their resignations, Individual Defendants engaged in egregious violations of the duties of loyalty and good faith that they owed to Plaintiffs by conspiring among themselves and with Cox Graphic, a competitor company that Individual Defendants founded nearly a year ago, to improperly leverage Plaintiffs' confidential information to surreptitiously siphon clients and other business opportunities for Defendants themselves. Defendants' prior and continuing misuse of Plaintiffs' confidential information and theft of Plaintiffs' business opportunities for Defendants' own profit cannot be tolerated. Plaintiffs bring this action to temporarily and permanently enjoin Defendants' ongoing wrongdoing to bar them from continuing to inflict harm to Plaintiffs, as well as to recover for the substantial injury that Defendants' acts of betrayal already have caused and continue to cause to Plaintiffs.

## JURISDICTION, VENUE, AND PARTIES

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between Plaintiffs Deluxe (a citizen of the State of Minnesota) and Safeguard (a citizen of the States of Texas and Delaware) and Defendants (all citizens of the States of Georgia or North Carolina) and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 in that this is a civil action with at least one cause of action arising under the laws of the United States.

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

4. Deluxe is a corporation organized and existing under the laws of the State of Minnesota. It maintains its principal place of business at 801 S. Marquette Avenue, Minneapolis, Minnesota 55402.

5. Safeguard is a subsidiary of Deluxe. It is organized and exists under the laws of the State of Delaware and maintains its principal place of business at 3000 Kellway Drive, Suite 300, Carrollton, Texas 75006.

6. The Roost Holding Company, LLC is a Georgia limited liability company registered on or about September 23, 2024. Its address listed with the Georgia

Secretary of State is 90 Copper Leaf Way, Dallas, Georgia 30132, and it is classified as offering "printing and writing paper merchant wholesale services."

7. Upon information and belief, The Roost Holding Company, LLC does business as Cox Graphic Services with its address at 90 Copper Leaf Way, Dallas, Georgia.

8. Defendant Gavin Cox is a citizen of Georgia domiciled at 90 Copper Leaf Way, Dallas, Georgia 30132. Mr. Cox is a former general manager at Plaintiffs. Mr. Cox is listed with the Georgia Secretary of State as the registered agent of The Roost Holding Company, LLC.

9. Defendant Patrick Barfield is a citizen of Georgia domiciled at 3600 Spring Flats Road, Albany, Georgia 31705. Mr. Barfield is a former customer service and sales representative at Plaintiffs.

10. Defendant Dawn Cook is a citizen of Georgia domiciled at 165 Winston Lane, Blairsville, Georgia 30512. Ms. Cook is a former client services consultant at Plaintiffs.

11. Defendant Lenzi Faircloth is a citizen of Georgia domiciled 116 Eight Mile Road, Albany, Georgia 31721. Ms. Faircloth is a former customer service representative at Plaintiffs.

12.  Defendant Jennifer Dockrey is a citizen of North Carolina domiciled at 1146 Rockridge Road, Murphy, North Carolina 28906.  Ms. Dockrey is a former customer service and sales representative of Plaintiffs.

13.  Defendant Courtney Hudson is a citizen of Georgia domiciled at 201 Hillside Drive, Albany, Georgia 31701.  Ms. Hudson is a former sales account representative of Plaintiffs.

14.  Defendant Michael Knight is a citizen of Georgia domiciled at 95 Stanley Parkway, Ringold, Georgia 30736.  Mr. Knight is a former customer service and sales representative of Plaintiffs.

15.  Defendant Linda Stewart is a citizen of Georgia domiciled at 2970 Meadow Wood Court, Lawrenceville, Georgia, 30044.  Ms. Stewart is a former customer service and sales representative of Plaintiffs.

16.  Defendant Jonathan Howse is a citizen of Georgia domiciled at 240 Inland Ridge Way, Atlanta, Georgia 30342.  Mr. Howse is a former sales account representative of Plaintiffs.

17.  Defendant Jon Wood is a citizen of Georgia domiciled at 94 Air Castle Drive, Trenton, Georgia, 30752.  Mr. Wood is a former client service consultant of Plaintiffs.

## FACTS

### Plaintiffs Retained Individual Defendants

18. Founded in 1915 in Minnesota, Deluxe operates four primary business divisions: business-to-business payment processing, data services, printing services, and merchant services. Deluxe's Business-to-Business Payment Processing Division offers treasury management and payment solutions for business-to-business transactions. Deluxe's Data Services Division provides data-driven marketing and analytics to help businesses and financial institutions find and acquire customers. Deluxe's Merchant Services Division offers electronic payment processing solutions for businesses that accept payments from businesses and consumers. Deluxe's Print Division produces a wide range of physical products, including the checks for which Deluxe is well-known.

19. Founded in 1956, Safeguard, through its network of distributors, provides products, services, and expertise to assist small and large business owners. Through its innovation, dedication, and commitment to quality and integrity, Safeguard has transformed itself from a small check printing business to a fully diversified business solutions enterprise. Safeguard offers a range of products and services for small to medium-sized businesses, including promotional products, business printing, forms, office supplies, and business checks.

6

20.  In mid-2021, Deluxe acquired Excel Graphic Services, Inc. ("Excel") and ESPY Branding Company ("ESPY"), making payment of a substantial amount of money to Gavin Cox's father (Steve Cox) for the acquisition.  Deluxe, through Safeguard, has continued to operate Excel and ESPY as brand names after the acquisition through the present date.

21. Excel is a supplier of business printing, marketing products, and document management services that specializes in products from traditional business forms and labels to full color commercial printing, promotional printed advertising, and stationery products.

22. ESPY is a branding company that offers a comprehensive array of products and services for businesses, including promotional products that can be customized, among many other ways, with a company's logo or design to enhance brand visibility.

23. Following the acquisition of Excel and ESPY, Plaintiffs retained Individual Defendants.  Each Individual Defendant (with the exception of Jon Wood) executed an employment agreement with Deluxe relating to the position that individual would hold at Safeguard (Gavin Cox, Patrick Barfield, Dawn Cook, Lenzi Faircloth, Jennifer Dockrey, Courtney Hudson, Michael Knight, Linda Stewart, and Jonathan Howse, together "Employee Individual Defendants").  For example, Gavin

Cox's employment agreement provides "an offer of employment for the position of General Manager, Safeguard – I at Deluxe."

24. As an employee of Deluxe working for Safeguard, each Employee Individual Defendant received a base salary, was eligible to participate in the Deluxe Sales Incentive Plan, and/or received employee benefits.

25. As a condition of employment, each Employee Individual Defendant signed, among other things, a confidentiality and intellectual property agreement (the "Confidentiality Agreement") with Plaintiffs.

26. The Confidentiality Agreement requires that during and after the Employee Individual Defendants' employment, they would keep all confidential information strictly confidential and would not disclose or use such confidential information unless required for work or authorized in writing by Plaintiffs. The Confidentiality Agreement requires, among other things, the Employee Individual Defendants to assign all rights to such information to Plaintiffs, acknowledging it as Plaintiffs' sole property, and to immediately notify Plaintiffs' General Counsel if they learned of anyone else's unauthorized use or disclosure of confidential information. The Confidentiality Agreement defines "Confidential Information" as including, but not limited to, customer data, pricing, employee information, financial data, business plans, R&D activities, software, and trade secrets.

27.  The Confidentiality Agreement also contains an enforcement provision, which states that should the provisions of the Confidentiality Agreement be violated, Plaintiffs may, in addition to all other rights and remedies available to them under law, apply for and obtain interim and permanent injunctive relief (without posting a bond or other security) and collect reasonable attorneys' fees and costs incurred in bringing any action to enforce the Confidentiality Agreement.  The enforcement provision also states that the party to be bound expressly agrees that Plaintiffs do not have an adequate remedy at law for a violation or potential violation of the Confidentiality Agreement.

28.  Furthermore, upon their hiring and at certain subsequent times, Employee Individual Defendants each received a copy of Deluxe's U.S. Employee Handbook (the "Employee Handbook"), which requires, among other things, that employees protect and maintain Plaintiffs' confidential information, which includes, but is not limited to, trade secrets and business plans, financial information, customer lists and customer information, supplier information, software, research and development, operating systems, marketing, personnel matters, and any other trade secrets, confidential business data, proprietary information, or other information which provides Plaintiffs an advantage over competitors.  The Employee Handbook specifies that Plaintiffs' information is classified according to several levels of confidentiality and that employees may not disclose any confidential information to

persons or firms outside Plaintiffs except when specifically authorized to do so. The Employee Handbook further specifies that, upon the end of employment, employees must return company-issued equipment and originals and all copies of Plaintiffs' records, correspondence, documents; all other property and assets of Plaintiffs, created or obtained by employees as a result of, in the course of, or in connection with employment with Plaintiffs which are in their possession or control, whether confidential or not; and all Plaintiffs or Plaintiffs-related passwords.

29. Each Employee Individual Defendant was required to sign a form indicating that he or she acknowledged receipt of the Employee Handbook and understood the policies, including those relating to confidential information.

30. The Confidentiality Agreement that Jonathan Howse signed, in addition to containing provisions regarding the confidentiality of Plaintiffs' information and the enforcement thereof, contains provisions that, during Mr. Howse's employment and for a period of 12 months following the termination thereof (whether voluntary or involuntary), prohibit Mr. Howse from "directly or indirectly, and in any manner or capacity (e.g., as an advisor, principal, agent, partner, officer, director, investor, shareholder, employee, member of any association or otherwise), engag[ing] in any business activities that are competitive with the business conducted or demonstrably anticipated by [Plaintiffs] on or prior to the termination of [his] employment with [Plaintiffs]" (the "Howse Agreement"). The Howse Agreement also prohibits Mr.

Howse (except with prior written consent from Plaintiffs) during his employment and for a period of 12 months following the termination thereof (whether voluntary or involuntary), from "induc[ing] or attempt to induce any contractor, customer, supplier, licensee, licensor or other business relation of [Plaintiffs] to cease doing business with [Plaintiffs], or in any way interfere with the relationship between any such contractor, customer, supplier, licensee, licensor or other business relation and [Plaintiffs]."

31. Jon Wood entered into an independent contractor relationship with Plaintiffs pursuant to which he received compensation in exchange for, among other things, providing service to Safeguard customers and protecting Safeguard confidential information shared with him.

32. Individual Defendants served in various core operations for the Excel and ESPY brands of Safeguard, including sales, operations, customer support, and administration. In particular, Gavin Cox was the general manager. Patrick Barfield, Jennifer Dockrey, Timothy Knight, and Linda Stewart were customer service and sales representatives. Dawn Cook was a customer client services consultant. Lenzi Faircloth was a customer service representative. Courtney Hudson and Jonathan Howse were sales account representatives, and Jon Wood was a client service consultant.

33. In their respective roles, each Individual Defendant served as an agent of Plaintiffs. Each Individual Defendant had the authority to solicit business on Plaintiffs' behalf and to enter into agreements with, among others, customers, distributors, and vendors on behalf of Plaintiffs relating to the products and services that Excel and ESPY offered.

34. The principal-agency relationship between Plaintiffs and each Individual Defendant vested each Individual Defendant with fiduciary duties owed to Plaintiffs, including the duties of good faith, loyalty, faithful service, and regard for Plaintiffs' best interests.

35. Plaintiffs entrusted Individual Defendants with non-public, confidential information of Safeguard, including but not limited to customer lists, contact information, and order history (including pricing and volume), as well as sourcing and pricing information for Safeguard distributors and vendors.

36. Each Individual Defendant worked for Plaintiffs for several years while being entrusted with and leveraging Safeguard's confidential information.

37. Safeguard has cultivated such confidential information over the course of many years through hard-earned business development, including with customers, distributors, and vendors, and by providing top-quality products and services. The confidential information is invaluable to Safeguard to allow it to maintain a

competitive edge in the market and to continue to reap the benefits of the immense customer goodwill that it has been able to garner through significant expense.

38.  Moreover, Safeguard uses reasonable measures to maintain the secrecy of its confidential information, including but not limited to customer lists, contact information, and order history (including pricing and volume), as well as sourcing and pricing information for Safeguard distributors and vendors.  Such measures include the use of information control measures, such as designating the information as "confidential" and limiting access to authorized individuals on a "need-to-know" basis.  Safeguard also has implemented physical and digital security measures, including storing physical documents in secured cabinets, implementing password protections and access controls for electronic data, using secure communications channels and data loss prevention tools, and encrypting digital files.  Safeguard also has developed and maintained written policies, including the Confidentiality Agreement and the Employee Handbook, which each Employee Individual Defendant was required to sign prior to beginning employment with Plaintiffs. Safeguard also provides annual training on the proper security and maintenance of its confidential information.

**Individual Defendants' Betrayal of Plaintiffs**

39. Despite years of a successful business arrangement and Plaintiffs compensating and providing benefits to Individual Defendants, in or around

September 2024, Individual Defendants hatched a plan to siphon business away from Safeguard for a new competitor, Cox Graphic, that Individual Defendants would control and/or operate.

40.  On September 23, 2024, Gavin Cox organized Cox Graphic by filing a certificate of organization with the Georgia Secretary of State's Office (under the name The Roost Holding Company, LLC).  On January 13, 2025, Gavin Cox filed an annual registration for the company.  At all times following its organization, upon information and belief, Cox Graphic was aware of Employee Individual Defendants' agreements with Plaintiffs.

41. Upon information and belief, soon after its organization The Roost Holding Company, LLC began doing business as Cox Graphic.

42. Beginning in early 2025, Defendants engaged in additional concerted action towards misusing Safeguard's confidential information and diverting customers and business relations away from Safeguard.

43. For example, in March 2025, Gavin Cox, on behalf of Cox Graphic, entered into an agreement with a buying group to facilitate the sourcing of materials for Cox Graphic to supply to customers.  Courtney Hudson and Lenzi Faircloth were listed names on the new account.  That same month, the buying group set up an account with a product vendor (with which Safeguard has a preexisting account) on behalf of Cox Graphic.  Cox Graphic began ordering products from the vendor

beginning in April 2025, and Individual Defendants ceased conducting business with that supplier on behalf of Safeguard around the same time.

44.  On or about April 16, 2025, Gavin Cox and Michael Knight secretly opened an account with another product vendor (again, with which Safeguard has a preexisting account) under the Cox Graphic name and began placing purchase orders with that vendor.

45.  Between April and August 2025, at least ten orders were placed with another vendor with which Cox Graphic also had set up an account.  At least nine similar orders on behalf of those same customers previously had been placed on behalf of Safeguard, further evidencing that Individual Defendants, while still employed by Plaintiffs, were transitioning Safeguard customers to Cox Graphic.

46.  On or about May 15, 2025, Gavin Cox and/or Michael Knight, on behalf of Cox Graphic, placed multiple purchase orders through a vendor for an existing Safeguard customer.

47.  In June 2025, Gavin Cox also set up an account under Cox Graphic with another one of Safeguard's vendors.  Courtney Hudson, Dawn Cook, and Michael Knight were added to the account.  Cox Graphic also began placing orders through this account that same month.

48.  Cox Graphic continued to place additional purchase orders in the coming months with Safeguard vendors.

49.  Over the following months, Defendants continued their conspiracy to steal Safeguard's customers and business relations by, among other things, forwarding Safeguard confidential information to Individual Defendants' personal and/or Cox Graphic email addresses and engaging with Safeguard customers to steer them to Cox Graphic (and then attempting to destroy such evidence).

50.  For example, on or about July 22, 2025, Michael Knight emailed an Excel Inventory Report to his personal email address.

51. On or about August 4, 2025, Lenzi Faircloth emailed Courtney Hudson and Patrick Barfield a Customer List Report containing detailed Safeguard customer contact information.

52. Beginning on or about August 5, 2025, Jonathan Wood forwarded numerous emails from his Safeguard address to his personal email address that included Safeguard customer details such as customer inventory reports, invoices, contact information, and order information.

53.  Also on August 5, 2025, Jonathan Howse emailed a customer using his Cox Graphic email address, copying Linda Stewart and Gavin Cox on the email, stating: "Per our conversation we are now Cox Graphic.  We are very excited for the opportunity to continue our way of doing business . . . Say hello to our president Gavin Cox.  Gavin is a great guy, leader and friend.  Linda Stewart will continue to provide the best support in the biz.  Our longtime financial chief Misty Davis will

send along our W-9 and any additional set-up information. Please pay any outstanding Excel invoices to Excel until this transition is complete. Thank you so much for for [sic] your business and support and we look forward to the future." That customer then submitted an order on or about August 21, 2025, to Cox Graphic.

54. On or about August 8, 2025, Gavin Cox emailed a vendor approving and confirming that "Excel Graphic Services would like to transfer ownership of [a Safeguard customer] to Cox Graphic Services." Jon Wood responded to the same email chain on or about August 11, 2025, stating "[y]es, please move [the Safeguard customer] over to Cox Graphic Services," followed by Jennifer Dockrey the following date stating "[y]es, you have my consent to do this change."

55. On or about August 8, 2025, Jonathan Howse emailed Linda Stewart that he planned to "reach out to [a Safeguard customer] on Cox."

56. On or about August 12, 2025, Jonathan Wood deleted an email chain from his Safeguard email that confirmed the move of a Safeguard customer to Cox Graphic based on request from Gavin Cox.

57. On or about August 13, 2025, Lenzi Faircloth sent Patrick Barfield an email requesting that he remove Safeguard information from one of Safeguard's customer forms.

58. On or about August 14, 2025, Courtney Hudson (still employed by Safeguard but using a Cox Graphic email address), copying Patrick Barfield, sent an

email to a third party stating that Individual Defendants were moving out of the Safeguard office and "moving over all our accounts," and thus needed to put a "pause" on business operations as they "convert those accounts over" to Cox Graphic.

59.  That same date, as well as again on or about August 18, 2025, Courtney Hudson emailed a vendor instructing it to "release" certain orders "to Cox Graphic Services."

60.  On or about August 18, 2025, Jonathan Howse received emails from a Safeguard customer asking whether the customer should work through Safeguard or "Cox" moving forward.

61.  Between August 19 and 20, 2025, Gavin Cox, Michael Knight, Jennifer Dockrey, Jon Wood, Linda Stewart, and Jonathon Howse engaged in email communications seeking to divert inventory ordered for Safeguard customers to Cox Graphic.

62.  On or about August 20, 2025, Michael Knight forwarded information from multiple customer orders to his personal email address.

63.  Also on or about August 20, 2025, Jon Wood deleted multiple emails from his Safeguard account evidencing that he had forwarded numerous emails to the email address "jon.wood@coxgraphicservices.com." These deleted emails included Safeguard customer information such as copies of orders, contact

information, proposal information, and emails relating to proof acceptance.  On or about that same date, Jon Wood also forwarded customer contact information to his personal email account.

64.  On or about August 21, 2025, Gavin Cox set up call forwarding from his Safeguard telephone number.

65.  On or about August 21, 2025, Courtney Hudson also deleted a substantial number of her files from her Safeguard account.

66. Lenzi Faircloth engaged a third-party service provider that, on or about August 22, 2025, created copies of emails on her Safeguard account, which contained, among other things, Safeguard customer, order, and pricing information, for Ms. Faircloth to use in her personal and/or Cox Graphic capacity.

**Individual Defendants Resign en Masse from Plaintiffs**

67.  Following months of concerted, deceptive action in misappropriating Safeguard's confidential information and diverting customers and business opportunities from Safeguard, Individual Defendants abruptly resigned en masse as employees of Plaintiffs on August 22, 2025.

68.  On the day of their mass resignation, Individual Defendants continued to conduct business on behalf of Cox Graphic while using their Safeguard email addresses.

69. For example, on or about August 22, 2025, Patrick Barfield authorized services on behalf of a Safeguard customer. In response, the customer indicated that the day prior (on or about August 21, 2025), Courtney Hudson had "reach[ed] out" to the customer "from a company named Cox Graphic Services about the deposit slips and endorsement stamp. She said that you guys were just moving away from the Safeguard brand."

70. Individual Defendants continued their concerted, tortious conduct by improperly accessing their Safeguard email accounts to forward Safeguard's confidential information to their personal email accounts even after their resignation.

71. For example, following his resignation, Patrick Barfield forwarded an email from a customer from his Safeguard email address to his personal email account. Jon Wood likewise sent, after his resignation, customer account information and order materials to his personal account. Upon information and belief, both individuals forwarded these emails with the intent to secure additional customer relationships on behalf of Cox Graphic.

72. Immediately following Individual Defendants' mutinous resignation, Plaintiffs took steps to protect against the loss of confidential information and deactivated the Individual Defendants' accounts, thereby preventing Individual Defendants from accessing them. Plaintiffs also logged Individual Defendants out

of Plaintiffs' systems and removed Individual Defendants' authorizations for company telephone lines and reclaimed those telephone lines.

73.   All the aforementioned actions by Individual Defendants, on behalf of Cox Graphic, occurred without the knowledge of Plaintiffs.   It was not until Plaintiffs commenced their own investigation after the Individual Defendants' mass resignation that information came to light of Individual Defendants' deceptive scheme to divert customers and business opportunities away from Safeguard and to misappropriate Safeguard's confidential information.

### Safeguard's Revenue Decline

74.  At approximately the same time that Individual Defendants commenced and engaged in their illicit scheme, ESPY's and Excel's revenues declined by a significant margin as compared to the same months in 2024.

75.  After experiencing months of diminishing revenue, Safeguard inquired with Individual Defendants regarding the reason for the decline.  In response to Safeguard's inquiry, one or more of the Individual Defendants (including at least Gavin Cox) knowingly and falsely represented to Safeguard that general struggles with the economy were causing the revenue decline and did so to induce Plaintiffs to refrain from exploring the issue further that may have revealed Defendants' wrongful scheme.  Safeguard reasonably relied on these representations to not investigate the issue further at that time.

76. Plaintiffs' post-August 22, 2025, investigation has revealed that Defendants' actions in misappropriating Safeguard's confidential information and diverting Safeguard business to Cox Graphic proximately caused decline in ESPY's and Excel's revenues.

77. Following the discovery of Defendants' unlawful actions, Safeguard took immediate action to communicate with its customers to attempt to mitigate the significant damages that Defendants' conduct has caused and continues to cause.

78. Plaintiffs further sent a cease-and-desist letter to Defendants, on or about August 29, 2025, and again on September 3, 2025, demanding that Defendants cease their unlawful conduct and, among other things, return all converted and misappropriated confidential information to Plaintiffs.

79. Defendants refused to take the action demanded by Plaintiffs.

**COUNT ONE**
**Tortious Interference with Contractual and Business Relations**
**(Safeguard Against Cox Graphic**)

80. Safeguard repeats and realleges paragraphs 1 through 79 hereof, as if fully set forth herein.

81. Cox Graphic, through the actions of one or more Individual Defendants, opened accounts with at least one distributor and with multiple vendors and improperly and wrongly used such arrangements and knowledge of Safeguard's confidential information, including but not limited to customer volume, pricing, and

order history, to divert existing and prospective Safeguard customers to Cox Graphic.

82. Through such means, Cox Graphic caused third parties to enter into business relationships with it rather than Safeguard.

83. Such improper and wrongful conduct was performed without Safeguard's approval or any other legal privilege.

84. Cox Graphic acted purposefully and with malice with the intent to injure Safeguard by diverting sales revenue away from Safeguard and to injure Safeguard's goodwill and standing in the business community to Cox Graphic's benefit.

85. Cox Graphic's tortious interference proximately caused and continues to proximately cause damage to Safeguard through the loss of business revenue and goodwill.

86. Additionally, Cox Graphic improperly interfered with Plaintiffs' contractual relationship with each Employee Individual Defendant, in particular the confidentiality obligations contained in each such Confidentiality Agreement, by improperly and wrongly encouraging and causing each Employee Individual Defendant to disclose Safeguard's confidential information in breach of his or her contractual obligations.

87. Such improper and wrongful conduct was performed without Safeguard's approval or any other legal privilege.

88.  Cox Graphic acted purposefully and with malice with the intent to injure Safeguard by inducing each Employee Individual Defendant to breach his or her contractual obligations to assist in diverting sales revenue away from Safeguard and injuring Safeguard's goodwill and standing in the business community to Cox Graphic's benefit.

89.  Cox Graphic's conduct proximately caused and continues to proximately cause damage to Safeguard through, among other ways, the misuse of its confidential information, causing loss of business revenue and goodwill.

## COUNT TWO
### Conversion
**(Safeguard Against All Defendants)**

90.  Safeguard repeats and realleges paragraphs 1 through 79 hereof, as if fully set forth herein.

91.  Safeguard maintains title to and/or has the right to possesses specific property consisting of files and documents, including, but not limited to, customer lists, contact information, and order history, as well as volume and pricing information.

92.  Through their unlawful transfer via the email of such information to personal and/or Cox Graphic email accounts, Defendants took possession of this specific property consisting of files and documents, including, but not limited to,

customer lists, contact information, and order history, as well as volume and pricing information.

93.  Safeguard has demanded the return of all of its property, including the specific property consisting of files and documents, including, but not limited to, customer lists, contact information, and order history, as well as volume and pricing information.

94.  Defendants have refused to return Safeguard's property.

95.  Through their conversion, Defendants proximately caused and continue to proximately cause Safeguard damages through, among other ways (including costs associated with the recovery of confidential information), the misuse of its confidential information, causing loss of business revenue and goodwill.

## COUNT THREE
### Breach of Fiduciary Duty
**(Plaintiffs Against Individual Defendants)**

96.  Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

97.  While employed by Plaintiffs, each Individual Defendant acted as Plaintiffs' agent and had the authority to solicit business on Plaintiffs' behalf and to enter into agreements with, among others, customers, distributors, and vendors on behalf of Plaintiffs.

98.  Such agency relationship and contractual authority vested each Individual Defendant with a fiduciary duty to Plaintiffs.

99.  Such fiduciary duty required that each Individual Defendant, among other things, not engage in acts of competition with Plaintiffs and that each Individual Defendant not solicit customers for a rival business (i.e., Cox Graphic) during his or her employment.

100.  Individual Defendants acted on behalf of Cox Graphic (and/or themselves) and solicited customers on behalf of Cox Graphic (and/or themselves) while each was still employed by Plaintiffs, constituting a breach of the fiduciary duties owed to Plaintiffs.

101.  Individual Defendants' breach of their fiduciary duties proximately caused damage to Plaintiffs through, among other ways, the loss of business revenue and goodwill, as well as the compensation Plaintiffs paid to Individual Defendants.

### COUNT FOUR
### Aiding and Abetting Breach of Fiduciary Duty
### (Plaintiffs Against Cox Graphic)

102.  Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

103.  Cox Graphic, through improper or wrongful conduct, including but not limited to coercing Individual Defendants to siphon Safeguard customers and other

business opportunities for the benefit of Cox Graphic, acted to procure a breach of Individual Defendants' fiduciary duties owed to Plaintiffs.

104. Cox Graphic, with knowledge that Individual Defendants owed fiduciary duties to Plaintiffs, acted purposefully and with malice and the intent to injure Plaintiffs.

105. Cox Graphic's wrongful conduct procured a breach of Individual Defendants' fiduciary duties owed to Plaintiffs.

106. Cox Graphic's tortious conduct proximately caused damage to Plaintiffs through, among other ways, the loss of business revenue and goodwill, as well as the compensation Plaintiffs paid to Individual Defendants.

<strong><u>COUNT FIVE</u><br><u>Violation of the Defend Trade Secrets Act ("DTSA")</u><br><u>(18 U.S.C. § 1836)</u><br>(Safeguard Against All Defendants)</strong>

107. Safeguard repeats and realleges paragraphs 1 through 79 hereof, as if fully set forth herein.

108. Safeguard owns confidential information in the form of, among other things, customer lists, contact information, and order history, as well as pricing and sales volume information that constitutes trade secret information under DTSA.

109. Such trade secret information relates to Safeguard's products and services, which are used in, or intended for use in, interstate commerce.

110. Safeguard employs security measures to maintain the secrecy of this confidential information such that it otherwise is not generally known outside Safeguard. Moreover, Safeguard's competitors cannot readily acquire or duplicate Safeguard's confidential information. Safeguard's confidential information is highly valuable to Safeguard and would be profitable to a competitor of Safeguard if disclosed because that information could, among other things, enable the competitor to offer prices, volume, and/or service to customers more favorable than the competitor otherwise may offer and to the detriment of Safeguard.

111. Each Employee Individual Defendant signed an agreement that contains a confidentiality agreement requiring that they not disclose to the public Plaintiffs' confidential information, as well as received and acknowledged similar obligations set forth in the Employee Manual and in training.

112. Individual Defendants knowingly and improperly transferred Safeguard's confidential information to their personal and/or Cox Graphic accounts for improper use by Cox Graphic and/or for themselves with the intent to benefit themselves and harm Safeguard in competition. Such misappropriation constitutes a breach of the confidence Safeguard reposed in each Individual Defendant.

113. Without Safeguard's consent, Cox Graphic has used and continues to use Safeguard's confidential information knowingly and improperly acquired

28

through Individual Defendants with the intent to benefit itself and harm Safeguard in competition.

114.  Defendants' misappropriation of Safeguard's trade secrets proximately caused and continues to proximately cause damages to Safeguard through, among other ways (including costs associated with the recovery of confidential information), the loss of business revenue and goodwill.

## COUNT SIX
## Civil Conspiracy
**(Plaintiffs Against All Defendants)**

115.  Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

116.  Defendants had a common unlawful design to:

    a.  convert Safeguard's property;

    b.  misappropriate Safeguard's trade secret information in violation of DTSA;

    c.  breach each Individual Defendant's fiduciary duties owed to Plaintiffs; and

    d.  breach the Confidentiality Agreement each Employee Individual Defendant signed with Plaintiffs.

117.  Defendants acted pursuant to a common design through:

a. the formation and continued registration of The Roost Holding Company, LLC to compete with Safeguard;

b. Individual Defendants' opening of accounts under the name of Cox Graphic with a distributor and vendors to facilitate business;

c. the unlawful solicitation of Safeguard's clients by Cox Graphic, through Individual Defendants; and

d. Defendants' unlawful misappropriation of Safeguard's confidential information.

118. Each Defendant is jointly and severally liable for actions in furtherance of the common unlawful design to injure Safeguard.

119. Defendants' conduct has proximately caused and continues to proximately cause damage to Safeguard through, among other ways, the loss of business revenue and goodwill.

## COUNT SEVEN
## Violation of the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO") (O.C.G.A. § 16-14-1, *et seq.*)
### (Safeguard Against All Defendants)

120. Safeguard repeats and realleges paragraphs 1 through 79 hereof, as if fully set forth herein.

121. Defendants acquired Safeguard's property through a pattern of racketeering activity, including but not limited to engaging in theft of trade secrets and theft by conversion.

122. Defendants did so while participating in an ongoing enterprise, specifically by being employed by and/or acting on behalf of Cox Graphic and among each other.

123.   Defendants conspired to commit these unlawful acts.

124.   The injury Safeguard has suffered includes, among other things, lost sales revenue and damage to Safeguard's goodwill and reputation, and flows directly from Defendants' theft of Safeguard's trade secrets and conversion, as well as the conspiracy relating thereto.

**COUNT EIGHT**
**Violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO") (18 U.S.C. § 1961, *et seq.*)**
**(Safeguard Against All Defendants)**

125.   Safeguard repeats and realleges paragraphs 1 through 79 hereof, as if fully set forth herein.

126.   Defendants acquired Safeguard's property through a pattern of racketeering activity, including but not limited to engaging in theft of trade secrets in violation of 18 U.S.C § 1832.

127. Defendants did so while participating in an ongoing enterprise, specifically by being employed by and/or acting on behalf of Cox Graphic and among each other.

128.   Defendants conspired to commit these unlawful acts.

129.  The injury Safeguard has suffered includes, among other things, lost sales revenue and damage to Safeguard's goodwill and reputation, and flows directly from Defendants' theft of Safeguard's trade secrets and conversion, as well as the conspiracy relating thereto.

## COUNT NINE
### Breach of Agreement
**(Plaintiffs Against Employee Individual Defendants)**

130.  Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

131. Each Employee Individual Defendant executed an employment agreement with Deluxe, which requires, among other things, that individual to agree to the Confidentiality Agreement that obligates each Employee Individual Defendant to not use or publicly disclose confidential information unless required for work or authorized in writing by Plaintiffs.

132. The Confidentiality Agreement prohibits Employee Individual Defendants from transferring confidential information to, among other things, any competitor entity or their personal email accounts (unless required for work or authorized in writing by Plaintiffs).

133. The Confidentiality Agreement further requirs Employee Individual Defendants to immediately notify Plaintiffs' General Counsel if they learned of anyone else's unauthorized use or disclosure of confidential information.

134.  By misappropriating Safeguard's confidential information by, among other things, emailing the information to their personal and/or Cox Graphic accounts and leveraging such confidential information for the purposes of assisting Cox Graphic to secure business away from Safeguard, as well as failing to immediately notify Plaintiffs' General Counsel when they learned of others' unauthorized use or disclosure of confidential information, Employee Individual Defendants breached their agreements with Plaintiffs.

135.  Plaintiffs have satisfied any and all conditions precedent to their right to demand performance by Employee Individual Defendants of their obligations under their respective agreements by providing consideration such as, among other things, compensation and benefits.

136.  In addition, Jonathan Howse signed the Howse Agreement, which prohibits him, after his employment, from competing with Plaintiffs and/or inducing or attempting to induce any contractor, customer, supplier, licensee, licensor or other business relation of Plaintiffs to cease doing business with Plaintiffs, or in any way interfering with the relationship between any such contractor, customer, supplier, licensee, licensor or other business relation and Plaintiffs.

137.  By joining Cox Graphic and/or by inducing and/or soliciting (and/or attempting to induce and/or solicit) customers away from Safeguard, as well as

33

interfering with such relationship, Jonathan Howse is in further breach of the Howse Agreement.

138.  Safeguard is an intended third-party beneficiary of the agreements (and a named party to the Confidentiality Agreement and the Howse Agreement) between Deluxe and each Individual Defendant.

139.  Employee Individual Defendants' conduct has proximately caused and continues to proximately cause damage to Plaintiffs through, among other ways (including costs associated with the recovery of confidential information), the loss of business revenue and goodwill.

**COUNT TEN**
**Unjust Enrichment (Pled in the Alternative to Count Nine as to the Employee Individual Defendants)**
**(Plaintiffs Against Individual Defendants)**

140.  Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

141.  Plaintiffs provided each Individual Defendant with the benefit of compensation in the form of salary, commission, and/or benefits in exchange for, among other things, the generation of revenue for Plaintiffs and the protection of Plaintiffs' confidential information from disclosure to and/or use by third parties.

142.  Each Individual Defendant misappropriated Safeguard's confidential information by, among other things, emailing the information to that individual's personal and/or Cox Graphic accounts, and/or leveraged such confidential

information for the purposes of assisting Cox Graphic to secure business away from Safeguard.

143.  Plaintiffs did not receive compensation, in the form of sales revenue and the protection of Plaintiffs' confidential information, in return for the benefit provided to each Individual Defendant.

144.  The failure to compensate Plaintiffs would render the transaction unjust.

**COUNT ELEVEN**
**Attorneys' Fees and Litigation Expenses (O.C.G.A. § 13-6-11)**
**(Plaintiffs Against All Defendants)**

145. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

146.  Defendants have acted in bad faith, were stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense in this matter, thereby forcing Plaintiffs to incur attorneys' fees and expenses in pursuing this action.  Defendants are responsible for those attorneys' fees and expenses.

**COUNT TWELVE**
**Punitive Damages (O.C.G.A. § 51-12-5.1)**
**(Plaintiffs Against All Defendants)**

147.  Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as it fully set forth herein.

148.  Each Defendant engaged in willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the

presumption of conscious indifference to consequences and is liable for punitive damages in an amount sufficient to punish, penalize, and deter. In particular, Defendants converted Safeguard's confidential information and misappropriated Safeguard's trade secret information in violation of DTSA. Cox Graphic also tortiously interfered with Safeguard's business relations, as well as contractual relationship with Employee Individual Defendants, and aided and abetted Individual Defendants' breach of fiduciary duties owed to Plaintiffs. Individual Defendants further breached fiduciary duties owed to Plaintiffs.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and award the following relief as permitted by law and equity:

A.    Damages: Award Plaintiffs compensatory, consequential, restitutionary, and/or nominal damages in an amount to be determined at trial, including but not limited to all actual damages suffered as a result of Defendants' conduct and disgorgement of the ill-gotten gains of Defendants.

B.    Interest: Award Plaintiffs pre-judgment and post-judgment interest as permitted by law, including legal interest from the time of breach or injury until the date of recovery.

C.        Necessary Expenses: Award Plaintiffs all necessary expenses incurred in connection with the subject matter of the claims, including expenses incurred in complying with any contract or agreement.

D.        Attorneys' Fees and Costs:  Award Plaintiffs reasonable attorneys' fees, costs of investigation, and all expenses of litigation, including but not limited to those authorized by O.C.G.A. § 13-6-11, O.C.G.A. § 16-14-6 (Georgia RICO), 18 U.S.C. § 1964 (Federal RICO), and 18 U.S.C. § 1836 (DTSA), as applicable.

E.        Punitive and Exemplary Damages: Award Plaintiffs punitive and/or exemplary damages as permitted by law, including but not limited to those available under O.C.G.A. § 51-12-5.1 and DTSA, for Defendants' willful, malicious, fraudulent, and/or consciously indifferent conduct.

F.        Treble Damages: Award Plaintiffs treble damages as authorized by O.C.G.A. § 16-14-6 (Georgia RICO), 18 U.S.C. § 1964 (Federal RICO), or any other applicable statute.

G.        Injunctive Relief: Grant Plaintiffs preliminary and permanent injunctive relief as appropriate, including but not limited to:

> 1. Enjoining Defendants from using, disclosing, or retaining Plaintiffs' confidential, proprietary, and/or trade secret information;

2. Requiring Defendants to return and/or destroy all confidential, proprietary, and/or trade secret materials and information in their possession, custody, or control;

3. Prohibiting Defendants from soliciting, servicing, or otherwise doing business with Safeguard's actual or potential customers in violation of any contractual or legal obligations;

4. Enjoining Defendants from engaging in further acts of breach, interference, conversion, misappropriation, or other unlawful conduct;

5. Requiring Individual Defendants to divest interest in Cox Graphic; and

6. Dissolving Cox Graphic.

H.      Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated: September 9, 2025.

Respectfully submitted,

*/s/ W. Alex Smith*

W. Alex Smith
Georgia Bar No. 532647
Derek L. Centola
Georgia Bar No. 749911
Alyssa P. Cavanaugh
Georgia Bar No. 252348
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308-2216
T: 404.885.3000
F: 404.885.3900
alex.smith@troutman.com
derek.centola@troutman.com
alyssa.cavanaugh@troutman.com

*Counsel for Plaintiffs Deluxe Corporation and Safeguard Business Systems, Inc.*